1997 ME 145

**KEY TRUST COMPANY OF MAINE**

v.

**NASSON COLLEGE et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 23, 1997.
Decided: July 3, 1997.

Laura M. O'Hanlon, Mark Haley, Conley & Haley, Bath, for plaintiff.

Bruce M. Read, Hodsdon, Read & Shepard, Kennebunk, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Nasson College appeals from the summary judgment entered in favor of Key Trust Company of Maine in the Superior Court (York County, *Fritzsche, J.*) on Key Trust's complaint seeking a foreclosure and sale. Nasson contends that the court improperly granted Key Trust's motions for a protective order and for a summary judgment. We disagree and affirm the judgment.

[¶ 2] In November of 1962, Nasson executed and delivered to Canal National Bank,[1] as trustee, a certain indenture of mortgage and deed of trust that was secured by the Allen Hall Dormitory and the Marland Hall Dormitory. In November of 1969, Nasson executed and delivered to Canal National Bank, as trustee, a second indenture of mortgage and deed of trust that was secured by the Science Building.

---

1. The record reflects that Key Trust acquired the trust assets of Key Bank of Southern Maine, the successor to Canal National Bank.

[¶ 3] On March 20, 1985, Nasson executed and delivered to Key Bank of Southern Maine, as successor trustee to Canal National Bank, two first supplemental indenture and bondholder consents amending the prior indenture of mortgage and deed of trust documents. Key Trust notified Nasson on November 23, 1994, that the supplemental indentures were in default, accelerated the debt, and demanded that the debt be cured. Key Trust filed a complaint for foreclosure by civil action on January 20, 1995, alleging that Nasson had defaulted on its obligations as provided by the supplemental indentures. After Key Trust was unsuccessful in serving Nasson and two parties-in-interest, it received, on March 14, 1995, an *ex parte* order allowing service by publication. Service by publication was effected on Nasson. The trial court (York County, *Fritzsche, J.*) granted Key Trust's motion for a summary judgment and a default judgment on August 15, 1995.

[¶ 4] On March 14, 1996, Nasson filed a motion for relief from judgment pursuant to M.R.Civ.P. 60(b). Because of Key Trust's failure to serve the Secretary of State pursuant to M.R.Civ.P. 4(d)(8), the court voided the previously entered judgment of foreclosure and the previously held public sale. The court subsequently entered an order, dated May 10, 1996, setting forth a pre-trial schedule and ordering that discovery be completed by June 30, 1996.

[¶ 5] Nasson filed an answer on May 30, 1996. Nasson admitted that it had failed to make payments but claimed that those "incidents [do not] constitute a default." Nasson also claimed that Key Trust had failed to state a claim on which relief could be granted and had waived its right to collect sums due pursuant to the supplemental indentures.

[¶ 6] On June 21, 1996, nine days prior to the date set by the court for the completion of discovery, Nasson served on Key Trust a set of interrogatories and a request for the production of documents. Key Trust responded by filing a motion for a protective order.

[¶ 7] On August 1, 1996, Key Trust filed a motion for a summary judgment and a default judgment and to dismiss parties-in-interest, along with a statement of material facts and an accompanying affidavit.[2] Nasson opposed the motion and filed its own statement of material facts and an accompanying affidavit signed by Edward Mattar, Chairman of the Board of Nasson College. After a hearing on November 5, 1996, the court granted Key Trust's motion for a summary judgment and motion for a protective order and entered a summary judgment for Key Trust. This appeal followed.

[¶ 8] Nasson contends that the court improperly granted a summary judgment because genuine issues of material fact exist. In addition, Nasson argues that it was precluded from pursuing legitimate discovery by the court's improper granting of Key Trust's motion for a protective order. We disagree.

[¶ 9] In an appeal from a grant of summary judgment, we review the court's conclusions for errors of law. In making that determination, we view the evidence in the light most favorable to the party against whom the judgment was entered to determine whether the record supports the trial court's conclusion that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *Simpson v. Central Maine Motors, Inc.*, 669 A.2d 1324, 1325–26 (Me.1996).

■ [¶ 10] In order to withstand a motion for a summary judgment, a party must respond by "setting forth specific facts showing that there is a genuine issue for trial." M.R.Civ.P. 56(e). Nasson's answer formally asserts the affirmative defense of waiver. Based on the affidavit of Mattar, however, it is clear that Nasson is relying on the defense of estoppel or forbearance, claiming that Key Trust is precluded from enforcing the provisions of the loan documents because of certain alleged promises and representations made to Nasson at the time the supplemental indentures were executed, and, although not in any way explicitly stated, on which Mattar alleges, Nasson somehow relied.

---

2. The parties-in-interest have not appealed.

[¶ 11] "Promissory estoppel is an accepted doctrine in Maine." *June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, 49 (Me.1996) (citing *Chapman v. Bomann*, 381 A.2d 1123, 1127 (Me.1978)). The Restatement provides: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee ... and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Restatement (Second) of Contracts* § 90(1) (1979).

■ [¶ 12] Although Nasson has adequately raised a material fact as to the existence of a *promise* that may have been made with regard to the federal government's intention not to foreclose in the event of a default, Nasson has utterly failed to demonstrate any evidence of its *reliance* on the alleged promise. That failure precludes Nasson's claim as a matter of law. Mattar's affidavit, on which Nasson relies for its alleged defense, states that Mattar relied on the alleged assurances as a benefactor and not as a principal or officer of Nasson.[3] The affidavit does not assert any reliance by Nasson. To avoid a summary judgment, Nasson was obligated to do more than state its affirmative defense. It was required to offer admissible evidence in support of that defense. *See Bangor & Aroostook R.R. v. Daigle*, 607 A.2d 533, 535–36 (Me.1992). Key Trust is entitled to a summary judgment because Nasson has failed to offer evidence in support of its defense.

■ [¶ 13] In its contention that the court abused its discretion in protecting Key Trust from discovery, Nasson has not indicated any information that it can expect to uncover in the requested discovery that could constitute reliance or forbearance to support its affirmative defense. It seeks information concerning promises that may have been made by the lender. Only Nasson, however,

can provide the necessary evidence about its reliance on the promises, and it has not done so; nor can Nasson reasonably contend that such information is in the possession of Key Trust. Accordingly, the court acted within its discretion by granting to Key Trust protection from responding to the requested discovery that was filed shortly before the court ordered deadline, that would require an extensive, time consuming search of Key Trust's records, and that in any event could not establish its only alleged defense. M.R.Civ.P. 26(c).

The entry is:

Judgment affirmed.

---

**3.** Mattar's affidavit provides in part:

11. I relied on those promises, and assurances, which can easily be validated by discovery and the subsequent depositions of many of the individuals who were present at the seminal meeting which included a large group of attorneys who can be relied upon to provide their respective notes.

12. Without such assurances I would have been unwilling to advance hundreds of thousands of dollars, and the Creditor's Committee would have been unwilling to release the college from bankruptcy. All of this can be substantiated via discovery.