2002 ME 178

**BAY VIEW BANK, N.A.,**

v.

**THE HIGHLAND GOLF MORT-
GAGEES REALTY TRUST.**

Supreme Judicial Court of Maine.

Argued: Dec. 10, 2002.
Decided: Dec. 31, 2002.

**450**

S. James Levis, Jr. (orally), Levis & Hull, P.A., Biddeford, ME, David A. Soley, Esq. (orally), Bernstein, Shur, Sawyer & Nelson, P.A., Portland, ME, for plaintiff.

Timothy H. Norton, Esq. (orally), Kelly, Remmel & Zimmerman, Portland, ME, James B. Bartlett, Esq., York, ME, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] The Highland Golf Mortgagees Realty Trust (the Mortgagees Trust) appeals from an entry of summary judgment by the Superior Court (York County, *Fritzsche, J.*) in favor of Bay View Bank (Bay View) and from an entry by the Superior Court of a final judgment of foreclosure and sale pursuant to M.R. Civ. P. 54(b). The Mortgagees Trust contends that the Superior Court erred by (1) granting Bay View's motion to strike and for protection of a letter written to a title insurance company by one of its attorneys; (2) entering summary judgment on the Trust's counterclaim because genuine issues of material fact remain in dispute; (3) denying the Trust's motion to strike or to continue Bay View's motion for summary judgment pursuant to M.R. Civ. P. 56(f); and (4) failing to determine the priority and amount due on the Trust's mortgage pursuant to 14 M.R.S.A. § 6322. We affirm.

## I. CASE HISTORY

[¶ 2] The issues in this case arise from the financing and development of the Highland Farms Golf Course, located in York. Financing of the development began

in 1993 with a first mortgage to the Orbisphere Corporation in the amount of $795,000. In 1995, a second mortgage was issued to Highland Golf Mortgagees Realty Trust. The initial loan secured by the Mortgagees Trust's second mortgage was $250,000. Later that same year, the Trust increased the secured loan to $500,000.

[¶ 3] The Highland Golf Mortgagees Realty Trust was created by the promoter of the golf course, Kenneth Giles, to solicit funds from individual investors to support development of the property. "Beneficiaries" of the Trust individually invested from $5000 to $125,000 and received a free lifetime membership in the golf course. Giles was the sole trustee of the Mortgagees Trust.

[¶ 4] In 1997, Orbisphere's first priority mortgage was assigned to Pioneer Capital Corporation. Pioneer then modified the mortgage to increase the secured amount to $1,025,000. In January 1998, Franchise Mortgage Acceptance Company (FMAC) loaned $1,050,000 for the development of the golf course. FMAC secured the loan with a mortgage on a large parcel of land that included the golf course. As a condition of this loan, FMAC required that it hold a first priority mortgage on the property. At the FMAC loan closing, the Pioneer first mortgage was discharged.

[¶ 5] While there is no dispute that FMAC required a first priority mortgage at the closing as a precondition of the loan, there is conflicting information as to how this first priority over the Mortgagees Trust mortgage was achieved. FMAC contends that Giles, acting on behalf of the Mortgagees Trust as its sole trustee, signed a subordination agreement as part of the loan closing in January 1998. This subordination agreement was never recorded and has never been produced. The Mortgagees Trust contends that no subor-

dination agreement was signed in January 1998.

[¶ 6] By late 1999, the FMAC loan was in default. There is no dispute that on December 7, 1999, Giles signed a replacement subordination agreement that was back-dated to January 27, 1998, the approximate date that the original subordination agreement was allegedly signed. Later in December 1999, Giles committed suicide. New trustees were then appointed for the Mortgagees Trust.

[¶ 7] In January 2000, Bay View, the successor-in-interest to FMAC, filed a complaint for foreclosure. The Mortgagees Trust answered, disputing Bay View's priority, and filed a counterclaim for foreclosure.

[¶ 8] Bay View filed a motion for summary judgment. The Mortgagees Trust opposed the motion and asked that it be continued, pursuant to M.R. Civ. P. 56(f) to allow more time to gather information in discovery. The Superior Court denied the Trust's Rule 56(f) motion. In July 2001, the court granted a summary judgment in favor of Bay View on the Mortgagees Trust counterclaim, holding that the subordination agreement was effective to render the Bay View mortgage superior to the Mortgagees Trust mortgage. A partial final judgment of foreclosure and sale pursuant to M.R. Civ. P. 54(b), resolving all matters between Bay View and the Mortgagees Trust, was entered on July 12, 2002. The Mortgagees Trust then brought this appeal.

## II. LEGAL ANALYSIS

[¶ 9] We review a grant of a motion for summary judgment de novo, in the light most favorable to the party against whom judgment has been granted, to decide whether the parties' statements of material fact and the referenced record evidence indicate any genuine issue of ma-

terial fact. *Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380. "A material fact is one having the potential to affect the outcome of the suit." *MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040, 1044. "A genuine issue exists when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *MP Assocs.*, 2001 ME 22, ¶ 12, 771 A.2d at 1044; *see also Francis v. Stinson*, 2000 ME 173, ¶ 37, 760 A.2d 209, 217.

[¶ 10] In summary judgment practice, "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations . . ., shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4); *see also Mastriano v. Blyer*, 2001 ME 134, ¶ 7 n. 2, 779 A.2d 951, 953. We do not search or consider any part of the record not specifically referenced in the parties' separate statements of material facts. M.R. Civ. P. 56(h)(4); *see also Gilbert v. Gilbert*, 2002 ME 67, ¶ 15, 796 A.2d 57, 60–61; *Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 5, 721 A.2d 169, 172.

[¶ 11] The Mortgagees Trust asserts that there is a genuine issue of material fact as to the validity of the subordination agreement, because no consideration was paid to the Mortgagees Trust in exchange for the subordination of its mortgage to the FMAC mortgage. However, the Mortgagees Trust did not allege any facts in its statement of facts that would establish a failure of consideration with respect to the subordination agreement. To avoid a summary judgment, the nonmoving party must do more than state its affirmative defense; it must offer admissible evidence in support of that defense. *Key Trust Co. v. Nasson College*, 1997 ME 145, ¶ 12, 697 A.2d 408, 410. The Mortgagees Trust has not satisfied its burden under M.R. Civ. P. 56(h)(2) to allege facts establishing a failure of consideration. In fact, the subordination agreement may have been supported by consideration because the Mortgagees Trust arguably benefited from FMAC's discharge of the Pioneer first mortgage as a condition for the loan.

[¶ 12] The Mortgagees Trust also asserts that there is a genuine issue of material fact as to whether the subordination agreement should have been considered for purposes of summary judgment because it is hearsay, because Bay View has failed to authenticate Giles's signature on the document, and because Bay View is unable to produce the original subordination agreement or a true copy of the original subordination agreement. Before the Superior Court, the Mortgagees Trust admitted or did not contest the following statements of fact: (1) Giles signed the original subordination agreement on January 29, 1998; (2) Giles brought the agreement back to Attorney Clark's office in York; (3) Clark acknowledged Giles's signature on the original subordination agreement; (4) Clark took possession of the agreement; (5) the original subordination agreement was misplaced by either Clark or the York County Registry of Deeds; and (6) upon realizing the mistake, Giles executed another subordination agreement in December 1999 as a ministerial act to replace the lost original subordination agreement.

[¶ 13] The Mortgagees Trust asserts only two facts contrary to Bay View's statements regarding the subordination agreement. First, it asserts that the "replacement" subordination agreement differed from the original subordination agreement because, "[i]t was back dated and the notary date was removed to give the false impression that the document had been signed in January 1998." Second, it also asserts that there was no mention of a

subordinated mortgage belonging to the Mortgagees Trust on FMAC's title insurance policy, even though a subordinated mortgage should have been listed on a schedule attached to the policy. Although this allegation gives the impression that the original subordination agreement was not executed, the Mortgagees Trust admits the existence of the original subordination agreement in its statement of material facts. In effect, the Mortgagees Trust merely disputes the veracity of the date of the replacement subordination agreement. This disputed fact would only be material if the original subordination agreement had to be recorded in order to be enforced against the Trust.

[¶ 14] Maine's recording statute states that "[n]o conveyance of an estate in fee simple, fee tail or for life, or lease for more than 2 years or for an indefinite term is effectual against any person except the grantor, ... unless the deed or lease is acknowledged and recorded in the registry of deeds...." 33 M.R.S.A. § 201 (1999). The statute further provides that "[c]onveyances of the right, title or interest of the grantor, if duly recorded, shall be effectual against prior unrecorded conveyances, as if they purported to convey an actual title." 33 M.R.S.A. § 201. The purpose of the recording statute is to provide notice. Thus, even if a conveyance of an interest in land is not recorded, it is still effective against the grantor, who had actual notice of the interest in the land by virtue of participating in the transaction.

*See* 33 M.R.S.A. § 201. The Mortgagees Trust had actual notice of the subordination of its mortgage to FMAC's mortgage because Giles, the sole trustee of the Mortgagees Trust, signed the original subordination agreement. Therefore, the dispute as to the date and authentication of the replacement subordination agreement is not material because the original subordination agreement is enforceable against the Trust.

[¶ 15] Finally, the Mortgagees Trust asserts that there is an issue of material fact as to whether Giles had the actual authority or the apparent authority to sign the subordination agreement without the consent of the beneficiaries.

[¶ 16] Bay View asserts it had a right to rely on Giles's apparent authority [1] to enter into the subordination agreement on behalf of the Trust pursuant to 18–A M.R.S.A. § 7–406 (1998). 18–A M.R.S.A. § 7–406 provides:

> With respect to a 3rd person dealing with a trustee or assisting a trustee in the conduct of a transaction, the existence of trust power and their proper exercise by the trustee may be assumed without inquiry. The 3rd person is not bound to inquire whether the trustee has power to act or is properly exercising the power; and a 3rd person, without actual knowledge that the trustee is exceeding his powers or improperly exercising them, is fully protected in deal-

---

1. We have defined apparent authority as:

   [A]uthority which, though not actually granted, the principal knowingly permits the agent to exercise or which he holds him out as possessing. Apparent authority exists only when the *conduct of the principal* leads a third party to believe that a given party is his agent. Apparent authority can arise if the principal knowingly or negligently holds someone out as possessing authority to act for him or her or it. A princi-

   pal, therefore, creates apparent authority by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.
   *Steelstone Indus. v. North Ridge Ltd.,* 1999 ME 132, ¶ 13, 735 A.2d 980, 983 (emphasis in original) (citations and internal quotation marks omitted).

ing with the trustee as if the trustee possessed and properly exercised the powers he purports to exercise. A 3rd person is not bound to assure the proper application of trust assets paid or delivered to the trustee.

[¶ 17] Bay View asserts that it had no actual knowledge, nor any reason to know that Giles lacked the authority to enter into a subordination agreement without the written consent of the beneficiaries.

[¶ 18] Under 18–A M.R.S.A. § 7–406, a third person is not bound to inquire whether the trustee has the power to act or is properly exercising the power. In addition, a third person "is fully protected in dealing with the trustee as if the trustee possessed and properly exercised the powers he purports to exercise," unless that third person has "actual knowledge that the trustee is exceeding his powers or improperly exercising them." 18–A M.R.S.A. § 7–406. Viewing the evidence in the light most favorable to the Mortgagees Trust, the Mortgagees Trust must set forth facts alleging that FMAC had actual knowledge that Giles was exceeding his power as trustee in order to survive summary judgment on this point.

[¶ 19] Although the Mortgagees Trust alleges that a title insurance attorney had knowledge of Giles's lack of authority, the Mortgagees Trust does not cite to any source in the record that establishes any connection between the title insurance attorney and FMAC that would have given FMAC actual notice of the lack of authority. If a proffered fact is not accompanied by a specific record reference, we will not consider it. M.R. Civ. P. 56(h)(4); *Gilbert*, 2002 ME 67, ¶ 15, 796 A.2d at 60–61. Thus, the Trust has not established a genuine issue of material fact as to FMAC's actual knowledge of Giles's lack of authority to enter into the subordination agreement.

■ [¶ 20] On a separate point, the Mortgagees Trust argues that the Superior Court erroneously denied the Trust's motion to strike or continue Bay View's motion for summary judgment pursuant to M.R. Civ. P. 56(f).[2] The Mortgagees Trust contends that Bay View filed its motion for summary judgment before the court had even entered a scheduling order and more than four months before the discovery deadline had passed. The Trust contends that, under the circumstances of the suicide of the Mortgagees Trust's sole trustee and the disorderly state in which the trustee left the Mortgagees Trust's affairs, the Mortgagees Trust did not have an adequate opportunity to complete specific depositions that it hoped might support its opposition to Bay View's motion for summary judgment.

[¶ 21] We review the trial court's order denying a Rule 56(f) motion for an abuse of discretion. *Selby v. Cumberland County*, 2002 ME 80, ¶ 12, 796 A.2d 678, 682; *Bahre v. Liberty Group, Inc.*, 2000 ME 75, ¶ 12, 750 A.2d 558, 561.

[¶ 22] First Circuit precedent interpreting the F.R. Civ. P. 56(f), which is identical to M.R. Civ. P. 56(f), provides a helpful, though not mandatory, framework for evaluating a movant's Rule 56(f) motion. *Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 46 n. 4 (1st Cir.1999) states that a Rule 56(f) motion must:

(1) be made within a "reasonable time" after the filing of a summary judgment motion; (2) place the [trial] court on

---

**2.** M.R. Civ. P. 56(f) provides that the court may refuse the application for summary judgment or may order a continuance of a motion for summary judgment if the party opposing the motion files affidavits stating reasons why the party is unable to present facts essential to justify its opposition.

notice that movant wants the court to delay action on the summary judgment motion ...; (3) demonstrate that movant has been diligent in conducting discovery, and show "good cause" why the additional discovery was not previously practicable with reasonable diligence; (4) set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist, and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion; and (5) attest that the movant has personal knowledge of the recited grounds for the requested continuance.

(internal quotation marks and citations omitted).

[¶ 23] In its Rule 56(f) motion, the Mortgagees Trust claimed that it needed additional time for discovery for two reasons. First, the trustees had sent to each beneficiary an affidavit under oath specifically outlining the balance due on their portion of the Trust loan to the golf course that, when returned, would assist the Trust in establishing the balance due under the Trust mortgage. Second, the Mortgagees Trust "wishe[d] to take the depositions of Plaintiff's (or FMAC's) loan personnel as well as Attorney Clark himself." The Mortgagees Trust accompanied its Rule 56(f) motion with an the affidavit asserting it was waiting for the twenty beneficiaries to return their affidavits, that the Trust "had indicated several times to Plaintiff's counsel that it intends to take the deposition of Plaintiff's key loan personnel and Jeffrey Clark ...," and that the Trust had "requested that Plaintiff provide the name of Plaintiff's employee or employees who handled the refinance closing as well as acceptable dates for that person's deposition."

[¶ 24] Bay View filed its complaint for foreclosure in January 2000, an amended complaint in April 2000, and a second amended complaint in June 2000. The Superior Court docketed the Mortgagees Trust's answer to Bay View's second amended complaint and counterclaim for foreclosure on June 23, 2000. The Superior Court docketed Bay View's third and final amended complaint on September 28, 2000, and the Trust's answer to Bay View's third amended complaint and counterclaim on October 17, 2000. Bay View's motion for summary judgment was filed in November 2000, ten months after the action had commenced.

[¶ 25] Although the Trust asserted that the new co-trustees had to sift through thousands of Trust documents after the death of Kenneth Giles in December 1999, it did not indicate why the additional discovery that the Trust requested in their Rule 56(f) motion had not been possible at an earlier time. Furthermore, the Mortgagee's Trust did not set forth any specific facts, other than the outstanding balance figures from the beneficiary affidavits, that it had a plausible basis to believe were material to their opposition to Bay View's summary judgment motion and could be discovered with additional time. Thus, the Superior Court did not abuse its discretion when it denied the Mortgagees Trust's motion to strike or continue Bay View's motion for summary judgment pursuant to M.R. Civ. P. 56(f).

[¶ 26] We need not address the Mortgagees Trust's claim that the Superior Court erred in granting Bay View's motion to strike and for protection of a letter from a Bay View attorney for a title insurance company. Disclosure of that letter would not create any dispute of a material fact on the issues essential to summary judgment. Also, the trial court did not err in entering a partial final judgment, M.R. Civ. P.

54(b), before deciding the order of priority of all of the junior mortgages and lien holders. The other issues raised by the parties do not merit further discussion.

The entry is:

Judgment affirmed.