STATE OF MAINE

CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-05-0274

```
                          *
MICHAEL PRACTICO,         *
                          *
            Plaintiff     *
                          *
v.                        *
                          *        ORDER
                          *
NEW YORK TIMES COMPANY    *
and NEW YORK TIMES        *
MANAGEMENT SERVICE,       *
                          *
            Defendant     *
                          *
```

This case come before the Court on Defendants New York Times Company and New York Time Management Service's Motion for Summary Judgment for Lack of Subject Matter Jurisdiction, Forum Non Conveniens, and Lack of Personal Jurisdiction.

## FACTUAL BACKGROUND

Plaintiff Michael Practico resides a portion of the year in Maine and a portion of the year in Florida. On May 23, 2002, while in Florida, Mr. Practico went to a newspaper dispensing box to buy a copy of the Sarasota Herald Tribune. As he reached in the box to grab a paper he was stung by what he thought was a bee. Later that evening, he experienced heart attack symptoms and was rushed to the emergency room by a neighbor. The next morning, Mr. Practico underwent a left heart catheterization and ventriculogram. On May 30, 2002, Mr. Practico again went to the same newspaper box to buy a paper and was attacked by a swarm of wasps. He was rushed to the hospital and diagnosed

with having suffered a reaction known as venom-induced anaphylaxix from the wasp stings. Mr. Practico's immunology specialist recommended immunology treatment for five to seven years, in order to avoid fatal consequences were he to be stung again.

On May 17, 2005, Mr. Practico filed a complaint against the New York Times Company ("NYTC") and the New York Times Management Services ("NYTMS") alleging negligence (Count I) and liability based on the theory of respondeat superior (Count II).

## DISCUSSION

NYTC argues that summary judgment should be granted for lack of subject matter jurisdiction because Plaintiff sued the wrong company. NYTC asserts that NYTMS, a wholly owned subsidiary of NYTC, is the owner of the Sarasota Herald Tribune and the newspaper box at issue in this case. Mr. Practico argues that the Court should disregard NYTC's corporate identity because NYTC held itself out as the owner of the Sarasota Herald Tribune.

A corporation is a separate legal entity with limited liability. *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶ 5, 720 A.2d 568, 571. Generally, Maine courts are reluctant to disregard the legal entity and will cautiously do so only when necessary to promote justice. *Id.* When equity so demands, a court may disregard the corporate entity "when used to cover fraud or illegality, or to justify a wrong." *Id.* Because piercing the corporate veil is an equitable remedy, it is consistent with equitable principles to disregard the corporate entity where a claimant demonstrates both that: (1) the defendant abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence. *Id.*, ¶ 6.

2

The Court reviews a motion for summary judgment in the light most favorable to the non-moving party to decide whether the parties' statements of material fact and the referenced record evidence indicate any genuine issue of material fact. *Bayview Bank, N.A. v. The Highland Gold Mortgagees Realty Trust*, 2002 ME 178, ¶ 9, 814 A.2d 449, 451. Here, the sole issue is whether NYTC abused the privilege of a separate corporate identity by holding itself out as the owner of the Sarasota Herald Tribune.

Mr. Practico maintains that NYTC held itself out as owner of the Sarasota Herald Tribune in the following ways: 1) NYTC's website states that members of the Times Company are a part of the "Times Company family," 2) the website states that the Regional Newspaper Group, of which the Sarasota Herald Tribune is a part, is a division of NYTC; 3) Traveler's Insurance Company ("Traveler's"), the insurer for NYTC and NYTMS, sent numerous communications to Mr. Practico regarding his claim and listing the insured as the NY Times Company; 3) Traveler's also made a settlement offer as agent for NYTC; and 4) the Columbia Journalism Review website states that NYTC owns the Sarasota Herald.[1]

In response, NYTC argues that its website does not demonstrate that it holds itself out as owner of the Sarasota Herald Tribune because the website does not discuss specific ownership of newspapers. NYTC admits that Traveler's listed the insured as the NY Time Company in communications with Mr. Practico. NYTC also admits that Traveler's engaged in settlement discussions

---

[1] The Center for Public Integrity website lists the Sarasota Herald Tribune as a print subsidiary of NYTC. See http://www.publicintegrity.org/telecom/analysis/CompanyProfile.aspx?HOID=24460 (last visited March 8, 2006).

3

with Mr. Practico regarding this claim.[2] However, NYTC maintains that Traveler's did not have the authority to communicate with Mr. Practico on behalf of NYTC in regards to this claim. Finally, NYTC contends that it has not control over the content of the information on the Columbia Journalism Review website. As such, the information on that website is neither authenticated nor relevant.

Here, the NYTC website does not specifically discuss ownership of newspapers. While the website states that NYTC acquired the Sarasota Herald Tribune on November 30, 1982, (Pl. Exhibit Q), it also indicates that the Sarasota Herald is a part of the New York Times Regional Newspaper Group, a division of NYTC. (Pl. Exhibit O, P, Q). Labeling a news group a division does not preclude it from also being a subsidiary. According to Stephen Dewitt, the Chief Financial Officer of NYTMS, the Sarasota Herald Tribune is a division of NYTMS, which is a wholly owned subsidiary of NYTC. (Def. Exhibit A). Mr. Dewitt also attests that NYTMS has its own employees, books, bank accounts, and files its own tax returns.[3] Furthermore, although the website refers to members of the Times Company as family, it also specifies that employees have career opportunities in the various businesses within the Times Company. While the website does not state that NYTC is the parent company with a number of subsidiaries, the mention of various businesses alone lends itself to that very

---

[2] Plaintiff asserts that Travelers Property Casualty, Defendant's insurance carrier, corresponded repeatedly with Plaintiff since 2002 affirming that its insured in regards to this claim was the New York Times Company doing business as the Sarasota Herald. Correspondence from Travelers shows that after Travelers asked for Plaintiff's prior medical records, (Pl. Exhibit H), it extended Plaintiff a settlement offer of $5,000 on behalf of "NYT d/b/a/ the Sarasota Herald." (Pl. Exhibit I).

[3] In June 2005, the parties discussed the possibility of amending the complaint to name NYTMS as Defendant and removing NYTC. (Def. Exhibit B).

4

interpretation. Finally, notwithstanding Traveler's mistake in referring to NYTC instead of NYTMS, a mistake by an insurer cannot be imputed to its insured.

Even if Mr. Practico succeeded in satisfying the first prong by demonstrating that NYTC and NYTMS did not have separate corporate identities, in order to pierce the corporate veil Mr. Practico must also prove that an unjust or inequitable result would occur if the court recognized a separate corporate existence. Here, while NYTC may be the deeper pocket, recognizing separate corporate existences would not provide an unjust or inequitable result.

Based on the evidence before it, the Court finds that NYTC did not abuse its separate corporate existence. There is no evidence that NYTC used its corporate entity to cover fraud, illegality, or to justify a wrong. Furthermore, the equitable theory of estoppel does not apply here because NYTC did not misrepresent its ownership of the Sarasota Herald Tribune and Mr. Practico did not change his position and rely to his detriment on information he received from the NYTC's website.[4,5]

---

[4] Restatement (Second) of Agency, § 8B: Estoppel; Change of Position

(1) A person who is not otherwise liable as a party to a transaction purported to be done on his account, is nevertheless subject to liability to persons who have changed their positions because of their belief that the transaction was entered into by or for him, if
    (a) he intentionally or carelessly caused such belief, or
    (b) knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts.
(2) An owner of property who represents to third persons that another is the owner of the property or who permits the other so to represent, or who realizes that third persons believe that another is the owner of the property, and that he could easily inform the third persons of the facts, is subject to the loss of the property if the other disposes of it to third persons who, in ignorance of the facts, purchase the property or otherwise change their position with reference to it.
(3) Change of position, as the phrase is used in the restatement of this subject, indicates payment of money, expenditure of labor, suffering a loss or subjection to legal liability.

[5] Mr. Practico did not rely on NYTC's website when he went to the newspaper dispensing box to retrieve the Sarasota Herald Tribune.

The entry is:

Defendants New York Times Company and New York Times Management Company's motion for summary judgment is **GRANTED**. The Courts of Maine do not have subject matter jurisdiction over NYTC or personal jurisdiction over the remaining Defendant NYTMS, a Florida corporation with no contacts in Maine. Accordingly, Maine is an inconvenient forum for this action.

DATE: _March 15 2006_

Roland A. Cole
Justice/Superior Court

CLERK OF COURTS
Cumberland County
P.O. Box 287
Portland, Maine 04112-0287

JOHN CAMPBELL ESQ
PO BOX 369
PORTLAND ME 04112

CLERK OF COURTS
Cumberland County
P.O. Box 287
Portland, Maine 04112-0287

TRACY HILL ESQ
93 EXCHANGE STREET
PORTLAND ME 04101