STATE OF MAINE                                        SUPERIOR COURT
                                                      CIVIL ACTION
YORK, ss.                                             DOCKET NO: CV-05-216


WILLIAM F. SCHIEBEL, et al

                    Plaintiff

            v.                              ORDER ON MOTION
                                            FOR SUMARY JUDGMENT


EHR INVESTEMENTS, INC.,

                    Defendant


        This case comes before the Court on Defendant EHR Investments' motion

for summary judgment on all counts of Plaintiff William Schiebel's complaint

and on EHR Investments' counterclaim.  Following hearing, the motion is

granted on counts II and III of Plaintiff's complaint and the portion of count I

seeking a discharge of the mortgage, and denied on Defendant's counterclaim.

                        **FACTUAL BACKGROUND**

        In 1973, William Schiebel began working for EHR Investments, Inc.

("EHR"), then Chemtex, Inc.  At that time, EHR was owned and controlled by

the Remmer family, including Susan (Remmer Ryzewic) and her husband John

Ryzewic.  The Remmer family also had fifty percent interest at one time in

William Smith Enterprise, Inc. ("WSE").  In or around 1994, control of WSE

passed to John Ryzewic.  In that same year, John Ryzewic appointed Mr. Schiebel

as president of WSE.  In addition to his base salary, John Ryzewic agreed that

WSE would pay Mr. Schiebel incentive compensation amounting to several thousand dollars per month.

Prior to June 1997, John Ryzewic acquired a Costa Rican corporation called Olympic Fibers, S.A. from EHR.[1] John Ryzewic orally agreed to pay Mr. Schiebel further incentive compensation from the profits of Olympic Fiber.

In June 1997, Mr. Schiebel negotiated a loan for $247,500 from John Ryzewic as agent for EHR. On June 30, 1997, the parties memorialized the loan in the form of a promissory note in the principal amount of $247.500. The note describes the manner of repayment in paragraph 2 as follows:

> **Repayment.** Principal and interest due under this Note shall be due and payable as follows:
>
> (a)    Accrued interest shall be payable by Maker quarterly on the first day of each calendar-year quarter beginning on July 1, 1997 from monies received or receivable by Maker from the "WSE Incentive Compensation Package", as described in Attachment 1 hereto.
>
> (b)    The principal amount of this Note together with any unpaid interest thereon shall be due and payable if not sooner paid, on June 30, 2001, such date being the final and absolute maturity date of this Note ("Maturity Date").
>
> The Maker shall have the right to prepay any party of the principal amount of this Note at any time, without penalty or premium.

Attachment 1 of the note provides that the proceeds of the WSE Incentive Compensation Package are to be allocated between Mr. Schiebel and EHR as follows:

> A.    Schiebel shall retain annually all compensation (salary and incentive compensation) up to an including the amount of $120,000 received or receivable from the WSE Package (the Base Amount).

---

[1] John Ryzewic then formed a machining division called Olympic Machining to perform various work under WSE contracts that otherwise would have been performed by WSE.

B.  EHR shall receive annually 50% of all proceeds above the Base Amount up to and including $165,000 which Schiebel receives or has a right to receive from WSE; and

C.  EHR shall receive annually 30% of all proceeds above $165,000 which Schiebel receives or has a right to receive from WSE.

As security for the note, Mr. Schiebel executed a second mortgage and security agreement.[2] The second mortgage established June 30, 2001, as the maturity date. On July 5, 2005, ten days before the closing on his real estate, Mr. Schiebel requested a discharge of the second mortgage. On July 14, 2005, upon Mr. Schiebel's payment of $450,000 from the proceeds of the sale of the real estate into an escrow account, EHR discharged the mortgage. Mr. Schiebel has not paid the full amount of the note, including interest.[3]

The only genuine issue of material fact is whether John Ryzewic orally agreed that all payments on this loan would come solely from Mr. Schiebel's WSE incentive package as claimed by Mr. Schiebel.

Count I of Mr. Schiebel's complaint seeks a declaration of the amount of the second mortgage and that Mr. Schiebel is entitled to a discharge of the second mortgage. Count II alleges that EHR failed to record a timely release of the mortgage in violation of the parties' agreement and 33 M.R.S.A. § 551. Mr. Schiebel requests damages on this count. Count III seeks a permanent injunction requiring EHR to discharge the second mortgage upon payment of $450,000 into an escrow account.

---

[2] The terms and conditions of the Second Mortgage are incorporated in the note.

[3] EHR claims that the total amount due July 2005 was $390,000. EHR also claims that interest increases at $68 a day.

3

EHR's counterclaim seeks payment of the note in full, together with fees and costs.

## DISCUSSION

Summary judgment permits the prompt disposition of a matter where the dispute rests solely on a question of law. *Tisei v. Town of Ogunquit*, 491 A.2d 564, 568 (Me. 1985). The Court reviews a motion for summary judgment in the light most favorable to the non-moving party to determine whether the parties' statements of material fact and the referenced record evidence indicate any genuine issue of material fact. *Bayview Bank, N.A. v. The Highland Gold Mortgagees Realty Trust*, 2002 ME 178, ¶ 9, 814 A.2d 449, 451.

a.   <u>Count I, II, and III</u>

EHR has discharged the mortgage. As such, EHR is not in violation of 33 M.R.S.A. § 551, which requires the discharge of a satisfied mortgage. Mr. Schiebel has not alleged with specificity any other violations of § 551. As for damages, it is unclear what, if any, damages were suffered between July 5, 2005, when the discharge was requested, and July 14, 2005, when the mortgage was discharged. Mr. Schiebel has not alleged any damages during that time. Accordingly, EHR's motion for summary judgment is granted on counts II and III of Mr. Schiebel's complaint and the portion of count I seeking a discharge of the mortgage.

b.   <u>EHR's Counterclaim</u>

The parties dispute whether the note is fully integrated. Specifically, Mr. Schiebel contends that the parties entered into an oral agreement such that the payment of the note will only come from proceeds from the WES incentive package. In response, EHR contends that the note is an unambiguous and fully

4

integrated agreement that does not incorporate the alleged oral agreement. As such, EHR argues that extrinsic evidence of the existence of an oral agreement is inadmissible to alter or vary the terms of the written agreement.

The first issue in the case is whether the promissory note is a fully integrated agreement. If so, the parol evidence rule applies to exclude extrinsic evidence offered to alter or vary unambiguous contractual language. *Astor v. Boulos Co.*, 451 A.2d 903, 905 (Me. 1982). The Law Court has held that a promissory note, which is merely a promise by one party that imposes no contractual duties on the other party, is not a fully integrated agreement. *Rogers v. Jackson*, 2002 ME 140, ¶ 9, 804 A.2d 379, 381.[4] In this case, the agreement in question is a promissory note whereby Mr. Shiebel promised to pay back a loan to EHR. The note imposes no contractual duties upon EHR. As such, the note is not a fully integrated agreement.[5]

Maine law provides that parol evidence of additional terms, such as an oral condition, is admissible to supplement a partially integrated agreement if the additional terms are consistent with the writing. *Rogers*, 2002 ME 140, ¶ 10 (quoting *Astor*, 451 A. 2d at 905-06). In *Rogers*, the Law Court grappled with whether an oral condition, whereby the defendant was not obligated to pay unless he was able to, was consistent with the writing. *Id.*, ¶ 11. The Court found that the ability-to-pay condition did not, "in a real sense," contradict the terms of the writing. *Id.*, ¶ 12, 804 A.2d at 382. The condition did not eradicate

---

[4] But see *Rogers v. Jackson*, 2002 ME 140, ¶ 16, 804 A.2d 379, 382 (C.J. Saufley, dissenting) (a promissory note is a contract to which basic principles of contract law apply).

[5] The note contains a clause stating "none of the provisions hereof may be waived, altered, modified, or amended except by an agreement in writing signed by Maker and Payee."

the payment obligation; it merely supplemented the agreement by preventing the payment obligation from coming into effect until such time as the defendant could afford to pay. *Id.* Accordingly, the Court held that the existence of the oral condition was a genuine issue of material fact warranting a denial of summary judgment. *Id.,* ¶ 12; see 3 Arthur L. Corbin, Corbin on Contracts § 592 at 554-55 (1960) (although it is highly improbable that parties to a written contract would orally agree to condition a promise to pay, the parol evidence rule should not be allowed to close the door to proof of such a condition) (quotations omitted).

In light of *Rogers*, we turn then to the language of the promissory note and the alleged language of the oral agreement to determine whether it is consistent with the writing. The repayment section of the note describes how the note will be repaid. It states that Mr. Schiebel shall remit to EHR monies received or receivable from the WSE Incentive package. The writing does not state that the loan be repaid *only* from the incentive package, nor does it state that the loan be repaid by Mr. Schiebel personally.

EHR contends that a review of the default section of the note clarifies the issue of whether or not Mr. Schiebel is personally liable under the note. The important part of the default section, EHR asserts, is the provision stating that prior to the maturity date, it is not a default if Mr. Schiebel fails to make a mandatory payment due to inadequate proceeds received or receivable from the incentive package.[6] EHR argues that the converse of this statement must also be

---

[6] The default section of the promissory note, found in the Second Mortgage, provides:

> any default in the payment of interest which is due and payable on the Note, whether by acceleration or otherwise; except, however, at all times prior to the Maturity Date (as defined in the Note), it shall not be considered and Event of Default if the Debtor fails to make an interest payment due to inadequate proceeds received or receivable from the WSE Incentive Compensation Package (as described in the Note).

true. If *after* the maturity date, Mr. Schiebel fails to make a mandatory payment due to inadequate proceeds received or receivable from the incentive package, he would be in default. This interpretation of the agreement solely on the basis of the default section is tenuous in light of conflicting language in the repayment section of the note.[7] Since the form of repayment is the essential element to be decided in this case, the Court's analysis focuses primarily on the construction of the repayment section of the promissory note.

The repayment section states that the Mr. Schiebel repay the loan with monies received from the WSE incentive package as described in Attachment 1. Attachment 1 clearly directs the payment of some proceeds from the WSE incentive package directly to EHR. Viewing the facts in a light most favorable to Mr. Schiebel, the alleged oral agreement between Mr. Schiebel and EHR merely supplements the terms of the repayment obligation. Similar to *Rogers*, the supplemental terms of the oral agreement condition repayment on availability of funds, in this case, from the incentive package. The oral agreement does not contradict, in a real sense, the terms of the written contract. See *Rogers*, ¶ 11, 804 A.2d at 381. Accordingly, the existence of the oral agreement is a genuine issue of material fact to be determined by a fact-finder.

The entry is as follows:

---

Art. II, 2.1(a).

[7] Mr. Schiebel executed a second mortgage as security for the note, which, EHR argues, becomes superfluous if there were no obligation to pay on Mr. Schiebel's part. The mortgage secures the payment of $247,500 "as provided in the promissory note." Notwithstanding the motive and purpose of the security agreement, which are questions for a fact finder, the proper analysis continues to be the construction of the repayment section of the promissory note.

Defendant EHR Investments' motion for summary judgment on counts II and III of Plaintiff Mr. Schiebel's complaint, and the portion of count I seeking a discharge of the mortgage, is Granted.

Defendant EHR Investments' motion for summary judgment on its counterclaim is Denied.

DATE: _5/24/06_           G. Arthur Brennan
Justice, Superior Court

```
David Hirshon, Esq. - PLS
Marshall J. Tinkle, Esq. - PLS
James C. Hunt, Esq. - DEF
```

8