MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 41
Docket:      Cum-19-335
Argued:      March 4, 2020
Decided:     April 2, 2020

Panel:       SAUFLEY, C.J., and MEAD, GORMAN, JABAR, and CONNORS, JJ.

INFOBRIDGE, LLC

v.

CHIMANI, INC.

GORMAN, J.

[¶1]  Chimani, Inc., appeals from a judgment of the Superior Court (Cumberland County, *Mills, J.*) granting partial summary judgment to InfoBridge, LLC, on InfoBridge's claim for breach of contract and denying Chimani's cross-motion for summary judgment on its affirmative defense of equitable estoppel.  The court concluded that Chimani waived its opportunity to argue equitable estoppel and that the contract unambiguously required Chimani to make royalty payments of up to $150,000.  We affirm the court's order on Chimani's cross-motion but, because we conclude that the contract's royalty provision is ambiguous, we vacate the court's order granting partial summary judgment in favor of InfoBridge.

## I. BACKGROUND

[¶2]  The undisputed facts, as set out in the parties' supported statements of material facts and viewed in the light most favorable to Chimani, are as follows.  *See Scott v. Fall Line Condo. Ass'n*, 2019 ME 50, ¶ 5, 206 A.3d 307.  In February of 2010, Chimani and InfoBridge executed a contract whereby InfoBridge would create a software application (the Program) to launch mobile applications for national parks.  For this work, Chimani was to pay InfoBridge $5,914 up front, $5,914 upon InfoBridge's completion of a working prototype, and $7,886 upon submission of the Program to the Apple App Store.  In addition to these scheduled payments, the contract contained a royalty provision requiring Chimani to pay InfoBridge

> [f]ourteen and one-half percent (14.5%) of the Net Revenue from each sale and download of the Program up to a total amount of $150,000 in the aggregate from all revenue sources derived from the Program including, but not limited to: sales, downloads, advertising fees, and volume purchasing agreements.  "Net Revenue" shall mean the fees actually paid to and received by [Chimani] from downloads of the Program by end-users to their iPhones net of (i) any refunds or returns, (ii) taxes paid by [Chimani] in connection with such download and (iii) any royalty amounts payable to the Application Store Provider (such as Apple Inc. in connection with the Apple Application Store) by [Chimani] in connection with such download (InfoBridge acknowledges that as of the Effective Date [Chimani] pays Apple Inc. a 30% commission on each such download) as well as any fees paid by [Chimani] to a third party in connection with the fees of [Chimani] derived from the Program.  [Chimani] agrees that it will request any

purchaser of [Chimani's] business to agree to comply with [Chimani's] obligations specified in [this section].

Chimani has generated about $1.2 million in total revenue from the Program and has made two royalty payments, totaling $924.23.

[¶3]  In 2016, InfoBridge filed a complaint against Chimani alleging breach of contract, quantum meruit, and unjust enrichment claims, and seeking $149,075.77 in damages plus attorney fees and costs.  In February of 2019, InfoBridge moved for a partial summary judgment on its claim for breach of contract, arguing that the royalty provision unambiguously required Chimani to pay InfoBridge 14.5% of Chimani's net revenue from the Program, up to a total royalty fee of $150,000.  Chimani opposed InfoBridge's motion and filed a cross-motion for summary judgment, arguing that InfoBridge was estopped from asserting its right to additional royalty payments based on the actions of its principal, Shaun Meredith.

[¶4] By order dated June 13, 2019, the court granted InfoBridge's motion for summary judgment, concluding that the contract's royalty provision was unambiguous and that it capped the total royalty fee at $150,000.  The court also denied Chimani's cross-motion on the grounds that Chimani had waived its equitable estoppel affirmative defense by failing to plead it.

4

[¶5]  Chimani timely appeals.  *See* 14 M.R.S. § 1851 (2018); M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

A.    Equitable Estoppel

[¶6] Chimani argues that the court erred by concluding that it waived its affirmative defense of equitable estoppel by failing to plead it.[1]  We review de novo the adequacy of a party's pleadings to raise an affirmative defense. *See Haskell v. Bragg*, 2017 ME 154, ¶ 20, 167 A.3d 1246; *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 18, 19 A.3d 823.

[¶7] Equitable estoppel is an affirmative defense that "precludes a party from asserting rights which might perhaps have otherwise existed, against another person who has in good faith relied upon [the party's] conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right." *Dep't of Health & Human Servs. v. Pelletier*, 2009 ME 11, ¶ 17, 964 A.2d 630 (alteration omitted) (quotation marks omitted).  To invoke the doctrine of equitable estoppel in order to avoid the enforcement of a contract, a party must establish that he or she reasonably

---

[1]  The court previously denied Chimani's motion to amend its answer to add estoppel as an affirmative defense because the motion was filed more than two years after the litigation began and fewer than two months before trial.  Chimani does not challenge this decision on appeal.

relied on a misrepresentation—through "misleading statements, conduct, or silence," or a combination thereof—by the party seeking to enforce the contract. *Id.* ¶ 18; *see also Longley v. Knapp*, 1998 ME 142, ¶ 12, 713 A.2d 939 ("Intent to mislead is not required . . . .").

[¶8]  Because equitable estoppel is an affirmative defense, it must be "specially pleaded" in a defendant's answer. M.R. Civ. P. 8(c) & Reporter's Notes Dec. 1, 1959. A party's failure "to timely plead an affirmative defense generally results in the waiver of that defense." *Haskell*, 2017 ME 154, ¶ 20, 167 A.3d 1246.

[¶9]  Although our pleading standards are "forgiving," *Desjardins v. Reynolds*, 2017 ME 99, ¶ 17, 162 A.3d 228, and we attempt not "to elevate technical form to a position of superiority over substance," *Graffam v. Geronda*, 304 A.2d 76, 79 (Me. 1973), a party intending to assert a particular affirmative defense must make that intention clear. In *Graffam*, a case frequently cited to protect less-than-precise pleading, we were careful to note that the relatively simple affirmative defense at issue—accord and satisfaction—had been so "clearly and unmistakably" pleaded that that defense should have been addressed by the trial court. *Id.* at 78-79.

[¶10]  Here, however, the more complex issue of equitable estoppel was neither clearly nor unmistakably raised.  The crux of Chimani's equitable estoppel argument is that Meredith failed to disclose Chimani's obligations on its contract with InfoBridge when Chimani—of which Meredith was, at that time, a salaried co-owner—converted from an LLC to a corporation in 2015.  Chimani points to only one statement in its pleadings that might have put InfoBridge or the court on notice of this argument: "[I]n October 2012, Meredith told [his co-owner at Chimani] that Chimani may or may not owe InfoBridge money for the Royalty Payment and that it was a matter that would be discussed later."  Nothing in this statement or in the rest of Chimani's pleadings "clearly manifests" an intention to raise equitable estoppel.  *Id.* at 78.  In fact, InfoBridge and the court would have had to make a series of inferential leaps in order to discern the shape of the equitable estoppel claim from that statement.  For example, neither that statement nor any other statement in its pleadings mentions whether or how Chimani relied on Meredith's representation, and nowhere does Chimani suggest that any such reliance was reasonable.  *See Pelletier*, 2009 ME 11, ¶¶ 17-18, 964 A.2d 630.  Chimani's generalized assertions of a possible power imbalance between Meredith and Chimani did not "clearly and unmistakably" alert the court or InfoBridge to a

claim of equitable estoppel.[2] *Graffam*, 304 A.2d at 78; *see Pelletier*, 2009 ME 11, ¶¶ 17-18, 964 A.2d 630.

[¶11]  In short, Chimani's pleading neither contains the term "equitable estoppel," or any terminology related to the defense, nor alleges facts from which the elements of estoppel clearly and unmistakably may be drawn. *See Graffam*, 304 A.2d at 78.  We affirm the court's judgment that Chimani waived its equitable estoppel defense.[3]

B.    Royalty Provision

[¶12]  Chimani also challenges the court's interpretation of the contract's royalty provision, which it addressed on the parties' cross-motions for summary judgment.  "We review a ruling on cross-motions for summary judgment de novo, reviewing the trial court's decision for errors of law and

---

[2] It is difficult to "clearly manifest[]"an intention to plead an affirmative defense without explicitly invoking that defense, *Graffam v. Geronda*, 304 A.2d 76, 78 (Me. 1973), because the factual underpinnings of particular affirmative defenses, *see* M.R. Civ. P. 8(c), will typically converge with a defendant's general assertions of blamelessness and divergent facts, and will therefore fail to put the plaintiff on notice that a more specific affirmative defense is being asserted.  As we discussed above, in *Graffam*, by contrast, the defendant "clearly and unmistakably" manifested an intent to plead the affirmative defense of accord and satisfaction—which requires a defendant to prove both a clear agreement and the execution of that agreement to satisfy an obligation—by stating facts that could be interpreted only as going to the elements of that defense: (1) that he delivered a check to the plaintiff, (2) that the check stated that it was for full and final payment of the defendant's obligations, and (3) that the plaintiff cashed the check.  304 A.2d at 77-79.  For this reason, *Graffam* is the exception, not the rule, and is best confined to its facts.

[3] Because Chimani waived its equitable estoppel defense, we need not—despite Chimani's urging—address the merits of that defense.

8

considering the evidence in the light most favorable to the party against whom the judgment has been granted in order to determine whether there is a genuine issue of material fact." *Scott*, 2019 ME 50, ¶ 5, 206 A.3d 307.

[¶13]   The parties do not dispute the existence or language of the contract, but hotly contest the proper interpretation of the royalty provision. The interpretation of a contract, "including whether or not its terms are ambiguous," presents a question of law that we review de novo. *Id.* ¶ 6 (quotation marks omitted).   If a contract's terms are unambiguous, it must be interpreted in accordance with those terms.  *Travelers Indem. Co. v. Bryant*, 2012 ME 38, ¶ 9, 38 A.3d 1267.  If the contract language is ambiguous, however, then the proper interpretation "becomes a question of fact for the factfinder," *Scott*, 2019 ME 50, ¶ 6, 206 A.3d 307, and summary judgment is inappropriate unless "the record . . . completely eliminate[s] the possibility of an issue of material fact concerning the intent of the parties," *Tondreau v. Sherwin-Williams Co.*, 638 A.2d 728, 730 (Me. 1994).  A contract's language is "ambiguous if it is reasonably susceptible to different interpretations." *Scott*, 2019 ME 50, ¶ 6, 206 A.3d 307 (quotation marks omitted).

[¶14]  The parties' disagreement about the royalty provision's meaning is easily distilled: InfoBridge argues that the $150,000 cap constitutes the

maximum amount of royalties to which it is entitled, and Chimani counters that $150,000 is the maximum amount of "Net Revenue" on which royalties are to be assessed. The contract provides an unambiguous method for calculating royalties (14.5% "of the Net Revenue from each sale and download of the Program"), which is followed by a cap on *something* ("up to a total amount of $150,000")—but what?

[¶15] The royalty provision is remarkably unclear on this question; either interpretation would be reasonable. *See id.* The parties advance various grammatical rules and canons of construction to support their respective interpretations, but these explanatory aids can shed only so much light on a sentence this jam-packed with modifying and qualifying phrases. *See* Univ. of Chicago Press, Chicago Manual of Style § 5.28 (17th ed. 2017) (noting that "[m]iscues and ambiguity commonly arise from" missing antecedents, the presence of multiple antecedents, and the presence of multiple pronouns and antecedents in the same sentence). Any attempt to reverse-engineer the parties' intent—which is, after all, the touchstone of our inquiry, *see Tondreau*, 638 A.2d at 730—solely from the four corners of this contract would be in vain. This is an ambiguous contract and its true meaning is therefore a question of fact. *See Scott*, 2019 ME 50, ¶ 6, 206 A.3d 307.

[¶16]  The summary judgment record, moreover, does not "completely eliminate the possibility of an issue of material fact concerning" the royalty provision's meaning.  *Tondreau*, 638 A.2d at 730.  The parties dispute a number of factual details regarding the course of the contract negotiations as well as the inferences to be drawn from those contested facts, all of which bear directly on whether they intended to cap royalties at $150,000 or at 14.5% of $150,000.  Neither party, in short, presents undisputed facts that "would necessarily be determinative of the meaning of the contract."  *Id.* at 731.

[¶17]  Because the royalty provision is ambiguous and the summary judgment record does not permit us to determine its meaning as a matter of law, we have no choice but to vacate the judgment.  *Id.* at 730.

The entry is:

> The order denying Chimani's cross-motion for summary judgment on the equitable estoppel issue is affirmed.  The order granting InfoBridge's motion for partial summary judgment, interpreting the royalty provision, is vacated.  Remanded for further proceedings consistent with this opinion.

Maureen M. Sturtevant, Esq. (orally), and John F. Lambert Jr., Esq., Lambert Coffin, Portland, for Appellant Chimani, Inc.

Timothy J. Bryant, Esq. (orally), and Jonathan G. Mermin, Esq., Preti Flaherty Beliveau & Pachios, LLP, Portland, for appellee Infobridge, LLC

Cumberland County Superior Court docket number CV-2016-427
FOR CLERK REFERENCE ONLY