STATE OF MAINE
PISCATAQUIS, ss

SUPERIOR COURT
Civil Action
Docket No. CV-21-0005

MOOSEHEAD MOUNTAIN RESORT,
INC.,

and

OFLC, Inc.,

     Plaintiffs

v.

CARMEN REBOZO FOUNDATION, INC.,

     Defendant.

**ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

On June 25, 2021, Plaintiffs commenced this suit by filing a complaint raising six counts against Defendant including claims for breach of contract, unjust enrichment, breach of a duty of good faith and fair dealing, intentional misrepresentation, and negligent misrepresentation. Their dispute centers upon a $6,350,000 promissory note which plaintiff Moosehead Mountain Resort ("Moosehead") executed in 2007 along with a mortgage securing the note, both of which were subsequently assigned to Defendant. The matter before the Court now is Plaintiffs' motion for summary judgment concerning that note and mortgage. The motion seeks a partial judgment from the Court ordering: (1) "that Defendant may not collect default interest or attorney's fees under the note and mortgage;" (2) "that the correct payoff [amount] as of November 30, 2021 is $4,079,856.75;" (3) that Plaintiff be awarded "$20,400 in fees and costs and such additional amounts as may be supported by affidavit;" and (4) that the Plaintiffs be granted some unspecified "further relief" if doing

so is just and proper. (Pl.'s Mot. Summ. J. 13.)[1] As explained in the following sections of this Order, the Court denies the motion because it is apparent from the summary judgment record that genuine disputes of material fact exist pertaining to these matters.

## I.  STANDARD OF REVIEW

Summary judgment is appropriate only when the moving party has shown that no genuine dispute exists concerning the material facts and that it is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). A fact is "material" when it has the potential to affect the outcome of the case. *Lougee Conservancy v. City Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774. A "genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth." *Holmes*, 2019 ME 84, ¶ 15, 208 A.3d 792. The facts in the summary judgment record are limited to those facts which are properly set forth in the parties' respective statements of fact. *See e.g., Pushard v. Riverview Psychiatric Ctr.*, 2020 ME 23, ¶ 4 n.2, 224 A.3d 1239; *Berry v. MaineStream Fin.*, 2019 ME 27, ¶ 7, 202 A.3d 1195; *Holmes v. E. Me. Med. Ctr.*, 2019 ME 84, ¶ 14, 208 A.3d 792; M.R. Civ. P. 56(c), (h). The Court considers those facts in the light most favorable to the non-moving party. *Cormier v. Genesis Healthcare LLC*, 2015 ME 161, ¶ 7, 129 A.3d 944; *Jenness v. Nickerson*, 637 A.2d 1152, 1154 (Me. 1994) ("[T]he party seeking the summary judgment has the burden of demonstrating clearly that there is no genuine issue of fact. Any doubt on this score will be resolved against him and the opposing party will be given the benefit of any inferences which might reasonably be drawn from the evidence.") (quoting 2 Field, McKusick & Wroth, *Maine Civil Practice* § 56.4 at 39 (2d ed. 1970)).

Where it is the plaintiff (i.e., the party who bears the ultimate burden of persuasion on the claim or defense at issue) who has moved for summary judgment, the plaintiff bears the burden of demonstrating "that each element of its claim is established without dispute as to material fact within

---

[1] The page number has been added by the Court, Plaintiffs' motion does not contain page numbers.

the summary judgment record." *N. Star Capital Acquisition, LLC v. Victor*, 2009 ME 129, ¶ 8, 984 A.2d 1278; *see also Cach, LLC v. Kulas*, 2011 ME 70, ¶¶ 8-9, 21 A.3d 1015. If the plaintiff satisfies this burden, the defendant, in order to avoid summary judgment, must come forward with specific facts demonstrating that a genuine, material, factual dispute exists for trial. M.R. Civ. P. 56(e); *Kulas*, 2011 ME 70, ¶¶ 8-9, 21 A.3d 1015.

## II. THE PARTIES' STATEMENTS OF FACT

### A. The Parties' Noncompliance with the Procedure Specified in M.R. Civ. P. 56(h)

M.R. Civ. P. 56(h) sets forth a specific procedure governing how parties must present the facts of the case to the Court when a party moves for summary judgment, which the Court will briefly explain here. Under Rule 56(h), the moving party must support its motion for summary judgment by submitting a statement of material facts (S.M.F.) which in separate, numbered paragraphs, sets forth the moving party's factual assertions. M.R. Civ. P. 56(h)(1). To be considered, each factual assertion must be supported by a specific citation to competent evidentiary material. M.R. Civ. P. 56(h)(1), 56(h)(4). The non-moving party must then respond by submitting an opposing statement of facts (O.S.M.F.), which responds to each of the moving party's factual assertions with an admission, qualification, or denial. M.R. Civ. P. 56(h)(2). Each responding paragraph of the O.S.M.F. must start with the designation "Admitted," "Denied," or "Qualified." *Id.* If the responding paragraph begins with the designation "Admitted" the paragraph "shall end with such designation." *Id.* If the non-moving party wishes to qualify or deny a factual assertion, the party must do so by providing a specific record citation to competent evidentiary material supporting the qualification or denial. *Id.* In each responding paragraph the party may always note any objections to the moving party's factual assertion according to the procedure provided in Rule 56(i). M.R. Civ. P. 56(h)(2), 56(i). As part of its response,

the non-moving party may also submit a separate statement of additional facts (S.A.F.), setting forth, with proper supporting record citations, the non-moving party's factual assertions regarding any additional matters that it believes are material to the matters at issue in the motion. M.R. Civ. P. 56(h)(2) If the moving party wishes to respond to the non-moving party's S.A.F. it must do so by filing a reply statement that follows the same procedure applicable to the non-moving party's O.S.M.F. M.R. Civ. P. 56(h)(3). The Law Court has made it known that "[i]n the unique setting of summary judgment, strict adherence to the Rule's requirements is necessary to ensure that the process is both predictable and just." *Deutsche Bank Nat'l Tr. Co. v. Raggiani*, 2009 ME 120, ¶ 7, 985 A.2d 1. Failure to comply with the procedure set forth in Rule 56 may result in serious consequences to a party's efforts in moving for or opposing summary judgment. *See e.g., First Tracks Invs., LLC v. Murray, Plumb & Murray*, 2015 ME 104, ¶¶ 1-3, 121 A.3d 1279; *Stanley v. Hancock Cty. Comm'rs*, 2004 ME 157, ¶¶ 17-23, 864 A.2d 169; *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶¶ 11-13, 824 A.2d 48; *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶¶ 8-10, 770 A.2d 653.

The Rule 56(h) statements submitted by the parties on this motion for partial summary judgment display a number of instances where the parties failed to adhere to the required procedure. Most notably, in their reply statement to Defendant's S.A.F., Plaintiffs failed to support any of their denials or qualifications with specific citations to evidentiary material. As an example, in many instances, Plaintiffs responded to Defendant's factual assertions with the text: "Qualified: Admitted to the extent supported by the record. See Plaintiffs [sic] Affidavit." (*See e.g.,* Pl.'s Reply to Def.'s S.A.F. ¶¶ 1-8.) This is not an effective qualification because, amongst other issues, the response does not contain a specific supporting citation, such as a reference to a page or paragraph number of a specific record document, and instead seems to invite the Court to examine the whole of Plaintiffs' principal multi-page supporting affidavit (i.e., Mr. Confalone's affidavit) to, on its own, find some facts with which to qualify the Defendant's assertion in some way. It is not the Court's role to assist Plaintiffs

4

in the task of responding to Defendant's assertions. The Law Court's jurisprudence indicates that the Superior Court is not "permitted to independently search a record to find support for facts offered by a party." *Levine*, 2001 ME 77, ¶ 9, 770 A.2d 653. Even more importantly, the Law Court has further indicated that "[i]n the absence of specific record references, a proffered fact is not properly before the court" and that assertions in a Rule 56(h) statement of fact should be disregarded if not supported by a "specific citation" to competent evidentiary material. *See id* ("A statement of material facts must directly refer the court to the specific portions of the record from which each fact is drawn.") Because of Plaintiffs' failure to support their denials and qualifications with specific citations to evidentiary material, all of the factual assertions in Defendant's S.A.F. are deemed admitted to the extent the defendant's factual assertion was properly set forth and supported as required under Rule 56. *See e.g., Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶¶ 11-13, 824 A.2d 48 ("Because Doyle failed to follow the protocol set forth in Rule 56, many of DHS's material facts are not controverted and thus are properly deemed admitted."); *Stanley v. Hancock Cty. Comm'rs*, 2004 ME 157, ¶ 18, 864 A.2d 169; M.R. Civ. P. 56(h)(4) ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."). In turn, in the several instances where Defendant's O.S.M.F. designates a response to a factual assertion in Plaintiffs' S.M.F. with "Denied" or "Qualified" but fails to provide a specific record citation to support the response, the Court will deem the Plaintiffs' factual assertion as admitted to the extent the Plaintiffs' assertion was properly set forth and supported.

### B. Summary of the Parties' Statements

The following paragraphs briefly summarize the matters presented in the parties' respective statements of fact.

On June 20, 2007, Moosehead entered into a transaction with Machias Savings Bank for a $6,350,000 loan, with Moosehead delivering a promissory note in that amount to the Bank. (Pl.'s Supp.'g S.M.F. ¶ 1.) The note was secured by a mortgage using certain real estate owned by Plaintiffs as collateral. (*Id.*) This mortgage is recorded in the Piscataquis County Registry of Deeds[2] in Book 1849 at page 4. (*Id.*) As part of this transaction, plaintiff OFLC provided the Bank with a guaranty covering the $6,350,000 note and with a mortgage securing that guaranty. (*Id.* ¶ 2.) The mortgage securing OFLC's guaranty agreement is recorded in the Registry of Deeds in Book 1848 at page 37. (*Id.*) On April 10, 2013, the bank assigned the note and mortgage to Defendant.[3] (*Id.*)

The note and mortgage, now between Defendant and Plaintiffs, provided the following terms at the time it was assigned: (some of these terms were later modified, see following paragraph).

- A regular interest rate of 10.95% per annum
- A default interest rate of "six percent (6%) greater than the note rate in existence at the time of default" to be "imposed from the date of notice to Borrower of a default until the default has been cured to the Lender's satisfaction."
    - Default occurs when the "Borrower" or "Guarantor" fails to pay the amounts due and the nonpayment "is not cured within fifteen (15) days written notice from the Lender."
    - Default occurs when the "Borrower" or "Guarantor" breaches any of the "covenants, agreements or obligations" set forth in the parties' agreement and the breach "is not cured within fifteen (15) days written notice from the Lender."
    - Default occurs when "Lender" comes to believe that the collateral used to secure the loan is in danger of loss, misuse, or confiscation, or the "Borrower" and "Guarantor" have endangered the safety or integrity of the collateral, or the "Lender" otherwise perceives its interest in the collateral to be at risk.
    - Default occurs when a judicial or administrative action is commenced against the "Borrower" or "Guarantor" which might impact the "Lender's" interest; however, no default occurs if the legal action is dismissed within sixty days.
- The "Borrower" may not strip or commit waste upon the property identified as the collateral or suffer others doing so.
- The "Borrower" must provide the "Lender" with certain financial information and maintain clear and accurate records of income and expenses concerning the property identified as the collateral.
- A late fee equal to 10% of the overdue payment to be applied if the "Borrower" is ten days late in making a payment.

---

[2] All following references to the "Registry of Deeds" are to the Piscataquis County Registry unless otherwise specified.
[3] This assignment is recorded in the Registry of Deeds in Book 2229 at page 61.

- The "Borrower" agrees to pay all of the "Lender's" expenses incurred in collecting on or enforcing the "Borrower's" obligations under the note.
- The mortgage secures all of the costs incurred by the "Lender" to "obtain, preserve, and enforce the Mortgage, collect the obligation, and maintain and preserve the collateral, including, but not limited to, taxes, assessments, insurance premiums, repairs, attorneys' fees and legal expenses, rent, storage costs, and expenses of sale."
- The "Lender" may take any action it believes reasonably necessary to protect the value of the property identified as collateral or the "Lender's" interest in it, including defending any claim or legal action affecting those interests.
  - If any are incurred, those costs are added to the "Borrower's" debt and accrue interest at the default rate identified in the note.
- The "Lender" has the discretion to provide a partial release.
- Payments made by the "Borrower" must be applied first to accrued interest, then to the principal balance, and then to other expenses such as accrued late fees or collection fees. However, notwithstanding the foregoing, the "Lender" maintains the discretion to apply any and all payments in whatever order and manner the "Lender" deems advisable.

(Def.'s S.A.F. ¶¶ 3-18.)

After the note and mortgage were assigned from Machias Savings Bank to Defendant, Plaintiffs and Defendant executed a number of documents aimed at modifying the terms of the parties' loan agreement. These documents include what the parties refer to, as an 'allonge,' 'profit participation agreement,' and 'modification agreement.' (Def.'s S.A.F. ¶¶ 21-23.) The allonge, which is signed by Moosehead and OFLC's principal, Mr. James Confalone, indicates that it amended the original note's interest rate terms to state that the regular interest rate would be six percent per (6.00%) per annum and to state that a default interest rate of "eight percent (8.00%) greater than the note rate in existence at the time of default" would be "imposed from the date of default by Borrower until the default has been cured to the lender's satisfaction." (Def.'s S.A.F. ¶ 21.) These amended terms are different from the note's original terms which had provided for a default interest rate of six percent (6.00%) to "be imposed from the date of notice to Borrower of a default until the default has been cured to the Lender's satisfaction." (Def.'s S.A.F. ¶¶ 3, 21.) Plaintiffs do not address the allonge in their statement of facts. The terms found in the other loan modification documents, i.e., the 'profit participation agreement' and 'modification agreement,' did not make any further alterations to those interest rate

7

terms nor any other alterations to the parties' agreement that are material to the matters at issue on this motion. (Def.'s S.A.F. ¶ 22).

Sometime in 2014, Defendant loaned Plaintiffs an additional $700,000 and this additional loan was incorporated into the parties' financing agreement. (Def.'s S.A.F. ¶ 24.) In order to obtain this additional loan, Plaintiffs had agreed to pay Defendant $200,000 in prepaid interest. (Def.'s S.A.F. ¶ 25.) Plaintiffs and Defendant dispute whether this $200,000 was paid when it became due on September 14, 2014.[4]

According to Defendant, beginning in June of 2014, Plaintiffs began to miss payments due on the note, a breach of the parties' financing agreement, and that Plaintiffs have not cured the breach by paying off the arrears. (Def.'s S.A.F. ¶ 23.) In August of 2016, a legal action was commenced in Maine by Maine's Attorney General in which the Rebozo Foundation and Plaintiffs were all named as defendant parties. (Id. ¶¶ 29-31.) In this action, the State of Maine alleges that Plaintiffs failed to properly invest in a ski area property, which was identified as collateral in Plaintiffs and Defendant's loan agreement. (Id. ¶ 61.) Additionally, according to Defendant, as of September 28, 2017, Plaintiffs have allowed some property identified as collateral in the financing agreement to "significantly deteriorate in condition." (Def.'s S.A.F. ¶ 62 (referencing three photos of Moosehead's ski lodge taken on that date which show the lodge in an apparently deteriorated state)).

Plaintiffs asserts that in an email dated July 28, 2016, Defendants agreed to accept as a payment on the note and mortgage, title to some real estate that the parties agreed was worth $300,000. (Pl.'s Supp.'g S.M.F. ¶ 38.) Plaintiffs assert that they relied on this purported "written agreement" and

---

[4] Plaintiffs assert that Defendant failed to credit a $200,000 payment for the prepaid interest on that date and support the assertion with a citation to an affidavit submitted by James Confalone and a citation to certain transaction records (see Pl.'s Supp.'g S.M.F. ¶ 16; Confalone Aff. ¶ 18; Confalone Aff., Ex. H at 84-86.) The cited portion of the affidavit supports Plaintiffs' assertion, but the cited transaction records contradict the assertion and indicate that the $200,000 payment was in fact credited towards the outstanding interest on Plaintiffs' debt. (Confalone Aff., Ex. H at 85.) Even though Defendants failed to properly deny or qualify the Plaintiffs' assertion (see Def.'s Opp. S.M.F. ¶ 18), because one of Plaintiffs' supporting citations directly contradicts their factual assertion, the Court does not treat Plaintiffs' assertion regarding the $200,000 payment as undisputed.

8

stopped making monthly payments on the loan after August 1, 2016. (*Id.* ¶ 40.) Plaintiffs assert that Defendant breached this "written agreement" by failing to take title to the property and assert that Defendant is now wrongfully charging default fees on Plaintiffs' loan based on Plaintiffs' purported failure to make monthly payments. (*Id.* ¶ 41.) Defendant denies having ever entered into such an agreement with Plaintiffs. (Def.'s Opp. S.M.F. ¶¶ 38-41; Def.'s S.A.F. ¶¶ 26-28).

In May of 2019, Plaintiffs executed a purchase and sale agreement with a real estate developer wherein Plaintiffs contemplated selling some of the property identified as collateral in the parties' loan agreement, including a "ski mountain property" held by Moosehead. (Def.'s S.A.F. ¶¶ 31-33.) This purchase and sale agreement was contingent on Plaintiffs settling the Attorney General's suit against them. (*Id.* ¶ 34.)

Beginning in May of 2020, Plaintiffs communicated to Defendant that they wanted to sell some of the property identified as collateral in the loan agreement and requested that Defendant provide them with a "payoff" amount to facilitate the sale. (Pl.'s Supp.'g S.M.F. ¶ 7.) The parties' statements set forth a number of conflicting assertions about their dysfunctional communications relating to Plaintiffs' request for this "payoff" amount. The details of those communications are not immediately relevant to the matters at issue on this motion and therefore will not be summarized here. However, the Court will note that eventually in June of 2020, Defendant provided Plaintiffs with a letter indicating that Defendant believes that Plaintiffs have been in default under the terms of their agreement for some time and that Plaintiffs owed default interest totaling $944,748.58. (*Id.* ¶ 12.) Plaintiffs communicated their disagreement with this payoff number and their belief that they were not in default in various letters, emails, and telephone calls to Defendant. (*Id.* ¶¶ 10-14.) Plaintiffs then sent a letter in October of 2020 requesting that Defendants revise the payoff amount and provide a partial release to facilitate the sale of some of the property identified as the collateral. (*Id.* ¶ 28.) The parties continued discussions into 2021 regarding the amount due under their agreement and a

9

potential sale of the collateral without coming to an agreement regarding those matters. (*Id.* ¶ 29-34, 43; Def.'s S.A.F. ¶¶ 46-59.) In May of 2021, Defendant provided Plaintiffs with a revised calculation stating that the total amount due as of May 1, 2021 was $6,494,161.94 (with unpaid principal of $3,605,450.00, "default interest" totaling $2,795,155.04, and attorneys' fees of $93,556.90); however, Plaintiffs disagree with this calculation. (Def.'s S.A.F. ¶ 57-58; Pl.'s Supp.'g S.M.F. ¶¶ 41, 43.)

Throughout the duration of the financing agreement between Plaintiffs and Defendant, Defendant has not provided monthly invoices or annual balance statements. (Pl.'s Supp.'g S.M.F. ¶ 36.) Defendant has not issued demand letters concerning the loan agreement. (*Id.* ¶ 37.)

Plaintiffs commenced their suit against Defendant on June 25, 2021, by filing their complaint in the Superior Court. Plaintiffs filed this motion for partial summary judgment on November 19, 2021. In their motion, Plaintiffs assert that the "amount actually owed" on the note and mortgage as of October 1, 2021, is $4,079,856.75 (with unpaid principal totaling $3,367,772.40 and interest totaling $712,084.35). Defendant disagrees with this calculation and asserts that the amount due on the note has increased from the $6,494,161.94 stated in its May 2021 letter.

## III. ANALYSIS

### A. Defendant's Motion to Deny or Defer Summary Judgment Pursuant to M.R. Civ. P. 56(f).

Defendant has moved under M.R. Civ. P. 56(f) that the Court defer ruling on Plaintiffs' motion for summary judgment for a period of time to allow Defendant to have a fair opportunity to engage in discovery to obtain information that Defendant believes is necessary to oppose Plaintiffs' motion.

The Maine Rules of Civil Procedure permit parties to move for summary judgment at any time after an action is commenced as long as the motion is made "within such time as not to delay the trial[.]" *S. Portland Police Patrol Ass'n v. City of S. Portland*, 2006 ME 55, ¶ 11, 896 A.2d 960. Rule 56(f) tempers that general rule by protecting parties who oppose summary judgment but "who for valid

10

reasons" cannot present the facts essential to justifying their opposition to the motion. *S. Portland Police Patrol Ass'n*, 2006 ME 55, ¶ 11, 896 A.2d 960; *see also Angell v. Hallee*, 2012 ME 10, ¶ 13, 36 A.3d 922 (Stating that Rule 56(f) requires "that a party opposing summary judgment must be allowed adequate opportunity to conduct discovery or otherwise develop evidence in opposition to the summary judgment motion"). The Rule states the following:

> When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as just.

The Law Court has indicated that to obtain relief under Rule 56(f), the party opposing summary judgment "must, inter alia, set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist, and must further indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *S. Portland Police Patrol Ass'n*, 2006 ME 55, ¶ 12, 896 A.2d 960 (quoting *Bay View Bank, N.A. v. Highland Golf Mortgagees Realty Trust*, 2002 ME 178, ¶ 22, 814 A.2d 449). The Law Court has further indicated that the affidavits submitted by a party seeking relief under Rule 56(f) should "demonstrate that the party has been diligent in conducting discovery and show 'good cause' why the additional discovery was not previously practicable with reasonable diligence" and that the affidavits should "attest that the movant has personal knowledge of the recited grounds for the requested continuance." *Bay View Bank, N.A.*, 2002 ME 178, ¶¶ 22-25, 814 A.2d 449 (holding that a trial court did not err in denying a Rule 56(f) motion for continuance where the party's supporting affidavits did not fully explain what essential facts the party sought to justify its opposition to the motion for summary judgment and why additional discovery to obtain those facts had not been possible earlier).

Defendant argues in its Rule 56(f) motion here, that Plaintiffs moved for summary judgment so soon after the commencement of these proceedings that, at least at the time the motion was filed,

11

Defendant had not yet had a meaningful opportunity to conduct its own discovery efforts. In particular, Defendant notes that Plaintiffs' motion for summary judgment hinges upon the question of whether and when Plaintiffs defaulted under the terms of their agreement and notes that the resolution of those questions will influence the determination of whether Plaintiffs are correct regarding the amount due on the note as well as other issues. Defendant argues it has not had adequate time to conduct discovery on those topics and therefore lacks all the facts necessary to justify its opposition to Plaintiffs' motion.

The Court views Defendant's arguments on these points to be generally reasonable; nonetheless, Defendant has failed to demonstrate that it is entitled to Rule 56(f) relief here because Defendant has failed to properly support the motion by affidavit as required under the Law Court's interpretation of the Rule. None of the affidavits Defendant has submitted in its opposition to summary judgment contain information describing what efforts Defendant has made thus far to obtain the information it argues it needs to properly respond to Plaintiffs' motion. Nor do Defendant's affidavits set forth the other necessary information concerning whether Defendant has been "diligent in conducting discovery" nor whether "good cause" exists as to "why the additional discovery [sought by Defendant] was not previously practicable with reasonable diligence." Due to the lack of an affidavit supplying this information, the Court denies Defendant's request for relief under Rule 56(f). *See generally Bay View Bank, N.A.*, 2002 ME 178, ¶¶ 22-25, 814 A.2d 449.

### B. *Plaintiffs' Motion Concerning Default Interest and Related Fees*

Plaintiffs' legal argument in favor of partial summary judgment is premised on Plaintiffs' contention that, under the terms of the parties' loan agreement, Plaintiffs (the "Borrower" and "Guarantor") are only deemed to be "in default" if Defendant (the "Lender") provides written notice that a default event has occurred, and Plaintiffs fail to cure the breach within the allotted time. Plaintiffs argue that, because it is undisputed that Defendant has never sent any written notice of

12

default to Plaintiffs, Plaintiffs' account with Defendant has never been "in default" and therefore it is improper for Defendants to demand interest at the default rate and other fees that only may be assessed in the event of a default.

As support for this argument, Plaintiffs point to the provisions found in the note on page two and in the mortgage at section III, paragraphs A and B. (The relevant sections of the two documents appear to include the exact same provisions). Plaintiffs' motion does not identify any other portion of the parties' loan agreement as support for their argument. The portion of the note that Plaintiffs refer to is reproduced below along with two other subparagraphs that are found in the same section of the agreement and are of particular relevance to the issues.

> **Default.** Borrower shall be in default under the terms of this Note if any of the following events (each an "Event of Default") shall occur:
>
>> a) The failure of Borrower and/or Guarantor to pay when due any principal of, interest, costs or charges on this Note in accordance with the terms hereof, or any fees, charges or other amounts payable to Lender hereunder or under any other Loan Documents [sic], or of any other indebtedness or obligations of Borrower and/or Guarantor to Lender, and such failure is not cured within ten (10) days written notice from the Lender.
>>
>> (b) The failure, refusal or neglect of Borrower and/or Guarantor to properly observe, perform or comply with its covenants, agreements or obligations contained herein or any of the other Loan Documents, and such failure is not cured within fifteen (15) days written notice from the Lender.
>> . . .
>> (g) The Lender believes, in its sole discretion, that any of the collateral given as security for the Loan to be in danger of loss, misuse or confiscation, or that the Borrower and/or Guarantor has endangered the safety or integrity of the collateral or any liens of Lender; or the Lender, in its sole discretion, perceives its interest in the collateral to be at risk.
>> . . .
>> (i) The commencement of any judicial or administrative proceeding against the Borrower and/or Guarantor, or any company of which the Borrower or Guarantor is or was a principal owner, or against any collateral of Borrower and/or Guarantor, or any company of which the Borrower or Guarantor is or was a principal owner, which might affect Lender's interest in the property, and such proceeding is not dismissed within sixty (60) days or Borrower and/or Guarantor does not bond or provide other indemnification satisfactory

13

to Lender against an adverse result; or the entry of any court order which enjoins, restrains or in any way prevents Borrower and/or Guarantor, or any company of which the Borrower or Guarantor is or was a principal owner, from conducting all or any material part of Borrower's and/or Guarantor's business affairs in the ordinary course of busines unless such order is set aside within thirty (30) days.

. . .

(Pl.'s Mot. Summ. J. 10; Pl.'s Supp.'g S.M.F. ¶ 1; Confalone Aff., Ex. A at 2-4.)

In response to Plaintiffs' argument, Defendant contends that the governing loan document on whether and when the Defendant can demand default interest is the allonge to the note that Mr. Confalone signed after the note was assigned to Defendant in 2013. The relevant section of the allonge states:

NOW, THEREFORE, for good and valuable consideration, the receipt whereof is hereby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

. . .

(3) The section regarding interest in the Note is amended to read as follows:

Interest. Except in the event of default, interest will accrue on the principal of this Note, computed from the date hereof, at a fixed rate equal to six and zero hundredths of one percent (6.00%) per annum. Interest shall be calculated monthly on the outstanding principal balance of the Loan. . .

During any period in which the Borrower is in default under the terms of this Note or under the terms of any of the loan documents securing this loan, at Lender's option the Lender may impose a default interest rate which is eight percent (8.00%) greater than the note rate in existence at the time of default. The default interest rate will be imposed from the date of default by Borrower until the default has been cured to the Lender's satisfaction.

(Def.'s S.A.F. ¶ 21; Bertran Aff., at VMB000071-72). Defendant argues based on the allonge, that it can charge default interest from the date of any default, until the breach is cured to Defendant's satisfaction, regardless of whether any notice of default was previously sent. In the alternative, Defendant argues that, given the language in the allonge and the terms in the note and mortgage, the

14

parties' lending agreement is ambiguous as to whether Plaintiffs are considered to be "in default" from the date of default or only after notice is given and Plaintiffs fail to cure. In support of that argument, Defendant points in particular to the fact that none of the paragraphs in the 'default sections' of the note and mortgage listing the occurrences that are recognized as an "Event of Default," aside from paragraphs (a) and (b), specify that prior written notice of default must be given by the Lender before the occurrence is recognized as an "Event of Default." Defendant further argues that it has presented competent evidence supporting its position that Plaintiffs defaulted in ways other than those listed in paragraphs (a) and (b), such as the commencement of litigation against Plaintiffs by the state Attorney General in 2016 (see paragraph(i)) and by committing waste (see paragraph (g)). Defendant thus contends that summary judgment is inappropriate, as material factual disputes exist pertaining to whether Plaintiffs are "in default" under the loan agreement and pertaining to the meaning of the purportedly ambiguous default interest rate terms.

The question of how terms in a contract should be interpreted is a question of law for the Court, as is the question of whether the contract's terms are ambiguous. *InfoBridge, LLC v. Chimani, Inc.*, 2020 ME 41, ¶ 13, 228 A.3d 721. In the event the Court determines that contract terms are ambiguous, the meaning of those contract terms is deemed a question for the trier-of-fact "and summary judgment is inappropriate unless the record completely eliminates the possibility of an issue of material fact concerning the intent of the parties." *Id.* Contract language is ambiguous if "it is reasonably possible" to give the language "at least two different meanings." *Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp.*, 2005 ME 29, ¶ 24, 868 A.2d 220. When interpreting a contract's terms and determining whether contract terms are ambiguous, the Court considers the entirety of the contract. *Reliance Nat'l Indem.*, 2005 ME 29, ¶ 24, 868 A.2d 220. Additionally, the Court "may look to extrinsic evidence to reveal a latent ambiguity." *Villas by the Sea Owners Ass'n v. Garrity*, 2000 ME 48, ¶ 10, 748 A.2d 457. If an apparent ambiguity in a particular contract clause can be sufficiently clarified by

15

reference to other provisions in the contract, the clause is not ambiguous. *Reliance Nat'l Indem.*, 2005 ME 29, ¶ 24, 868 A.2d 220. Unambiguous contract terms are interpreted according to their "plain, ordinary, and generally accepted meaning" and so as to "avoid interpretations that would render any particular contractual provision meaningless." *Id.*

The first issue the Court must rule on is whether the default provisions of the note and mortgage, identified by Plaintiffs and Defendant, are ambiguous. Specifically, the Court must determine whether these provisions are ambiguous as to whether Defendant must first provide Plaintiffs with written notice and some opportunity to cure before any of the events listed as "Events of Default" in the note and mortgage. Prior to the enactment of the allonge, the interest section of the note explicitly required notice before default interest could be imposed. That explicit notice provision was omitted in the allonge, the terms of which specified that default interest could be imposed upon default. Concluding that notice was no longer needed, however, would not be accurate because the default provisions of the note still required notice for a nonpayment default and the default would be a prerequisite to imposing interest at the default rate. Those events listed in paragraphs (a) and (b) still required notice before a default could take place and in the absence of notice, default interest could not be imposed. This does not necessarily mean that the plaintiff prevails, however.

Plaintiffs argue that the default provisions require written notice and a failure to cure before any listed event is considered an "Event of Default", citing the very broad language contained in paragraph (b). Again, the text of paragraph (b) states that, "[t]he failure, refusal or neglect of Borrower and/or Guarantor to properly observe, perform or comply with its covenants, agreements or obligations contained herein or any of the other Loan Documents, and such failure is not cured within fifteen (15) days written notice from the Lender" qualifies as an "Event of Default."

Paragraph (b)'s wide reference to "covenants, agreements or obligations contained herein or any of the other Loan Documents" appears to signal that the parties intended paragraph (b) to apply to all of Plaintiffs' obligations set forth in any of the documents that comprise the parties' financing agreement.

This may not make sense, however, because when (b) is read in conjunction with the remainder of the default section, it is not clear at all that its notice provision applies to all of ways a borrower could default. First, the 15-day notice provision in (b) obviously doesn't apply to a failure to make a loan payment which is governed by the 10-day notice provision found in (a). These provisions are mutually exclusive. Additionally, at the beginning of the default provisions, the note and mortgage both state that "Borrower shall be in default under the terms of this Note **if any of the following events (each an "Event of Default") shall occur[.]**" (emphasis added). The meaning of this language would appear to be that if any of the events specified in the following lettered paragraphs comes to pass then the event is considered an "Event of Default." Although paragraph (b) is so broadly worded that it could be read to apply to each and every breach of contract obligations by the borrower should a breach occur, the list of events does not stop or begin with paragraph (b). Instead, this section of the contract provides nine other specific events, each of which, according to the beginning sentence, are to be considered an "Event of Default." None of the other paragraphs listing the "Event[s] of Default" specify that the event is only considered a default if the lender provides written notice of the breach and the borrower fails to cure. In this context, the fact that paragraph (a) and (b) specifically list written notice and the borrower's failure to cure within a specific time after notice as preconditions for the event to qualify as a default, when the other paragraphs of the section do not, indicates that the events listed in those other paragraphs do not include such preconditions.

Further, it would be somewhat strange and redundant to require the Lender to provide prior written notice before considering the occurrence of some of the listed events as a default. For

17

example, paragraph (i) provides that if a "judicial or administrative proceeding" is commenced "against the Borrower and/or Guarantor, or any company of which the Borrower or Guarantor is or was a principal owner, or against any collateral . . ., which might affect Lender's interest in the property" and the proceeding is not dismissed within sixty days the event is considered a default. In that circumstance, the Borrower or Guarantor would already have clear notice of a potential default event because they would more than likely have been served with the complaint (or at least provided other notice of the proceedings) by the party commencing the proceedings against them and would be presumed to have knowledge of the provisions in the note. The reasonableness of Defendant's interpretation is further bolstered by their evidence concerning the allonge that Mr. Confalone signed in 2013, which purports to remove an original provision in the note requiring that default interest be "be imposed from the date of notice to Borrower of a default until the default has been cured to the Lender's satisfaction" with a provision stating that default "be imposed from the date of default by Borrower until the default has been cured to the Lender's satisfaction." (Def.'s S.A.F. ¶ 21.) Accordingly, Defendant's preferred interpretation of the default provision may prevail according to the plain meaning of the document.[5] Under these circumstances the note and mortgage provisions pertaining to the question of whether notice is a prerequisite to the imposition of default interest are ambiguous at best.

In turn, the facts presented in Defendant's S.A.F. generate genuine factual issues pertaining to whether and when any of the "Events of Default" listed in paragraphs (c), (g), and (i) occurred. If any of those events did occur, then Defendants would arguably have the right under the loan agreement to charge default interest and related fees after the date of the default. These matters also generate additional questions of fact regarding the proper calculation of the default interest, fees, and,

---

[5] The Plaintiff has not addressed explicitly in any detail why the general notice provision in (b) applies to the other default provisions.

18

consequently, the proper calculation of the amount due on Plaintiffs' account with Defendant. For all of the above reasons, the Court denies Plaintiffs' motion for a partial summary judgment declaring "that Defendant may not collect default interest" and "that the correct payoff [amount] as of November 30, 2021 is $4,079,856.75[.]"

### C. Attorneys' Fees

Plaintiffs have moved that the Court declare in a summary judgment that Defendants are not entitled to recover any attorneys' fees incurred in enforcing Plaintiffs' obligations under the note. To support this request, Plaintiffs first point to the provision in the note stating, "Borrower agrees to pay all of the Lender's expenses incurred in collecting or enforcing this Note, including, but not limited to attorneys' fees and costs of suit." (Pl.'s Mot. Summ. J. 12.) They then argue that there are provisions found on page 2 of the note and page 7 of the mortgage that prohibit Defendant from recovering these fees and costs without providing a "prior written 10 or 15 day demand" for those fees and costs. The Court has studied page 2 of the note and page 7 of the mortgage and not found any contract language establishing that purported requirement—the referenced language on those pages pertain to when certain events qualify as a default under the agreement not to conditions that must be satisfied for Defendant to seek attorneys' fees incurred in enforcing the note. The Court thus rejects Plaintiffs' argument.

In the alternative, Plaintiffs argue that Defendant cannot recover attorneys' fees because Defendant has no evidence of any attorneys' fees incurred in collecting on or enforcing the note. Plaintiffs base this argument on their assertion that they have asked Defendant to provide information on such attorneys' fees and Defendant has not responded. (See Pl.'s Supp.'g S.M.F. ¶ 14.) However, this is not a prevailing argument either. Defendant has presented facts indicating that beginning in August of 2016, Plaintiffs and Defendant were all parties in a suit brought by the Attorney General alleging, inter alia, that Plaintiffs failed to properly invest in a ski area that serves as a portion of the

19

collateral being used as security in their loan agreement with Defendant. (Def.'s S.A.F. ¶¶ 29-30, 36, 61.) Defendant asserts that the work of its attorney(s) representing Defendant's interests in the Attorney General's suit falls under the scope of "Lender's expenses incurred in collecting or enforcing this Note." To bolster that position, Defendants cite to the provision in the mortgage stating that the obligations secured by the mortgage include "[a]ll costs incurred by the Lender to obtain, preserve, and enforce this mortgage, collect the obligation, and maintain and preserve the collateral, including, but not limited to, taxes, assessments, . . ., attorneys' fees and legal expenses, . . ., and expenses of sale." (*Id.* ¶ 12.) Defendant's attorney, Vanessa Bertran has also provided an affidavit where she avers that she and another attorney were employed by Defendant to represent Defendant's interests in the ski area and loan agreement generally in the case brought by the Attorney General. (*Id.* ¶ 60.) Attorney Bertran also avers that Defendant has employed her to represent them in negotiations concerning the sale of the aforementioned ski area in 2020. (*Id.*) Her affidavit also includes an attachment where she lists the dates Defendants incurred attorneys' fees for Attorney Bertran and others and the amount of those fees. *Id.* (referencing attachment VMB 0000205)).

The Court is unable to grant summary judgment on the issue of attorney fees. Attorney fees incurred by defendant in the lawsuit brought by the State would not qualify as having being incurred "in collecting or enforcing this Note," or "all costs …to obtain, preserve, and enforce this mortgage, collect the obligation, and maintain and preserve the collateral, including, but not limited to, taxes, assessments, …, attorneys' fees and legal expenses. There is no indication that defending that lawsuit was done to enforce or collect this note, and although in the most general sense, defending the suit could have been done to preserve collateral, in part, to preserve this mortgage or collateral, the remaining terms in this clause make it clear that it addresses costs related to preservation of collateral during the collection or foreclosure process, which was not taking place at the time. On the other hand, it is a much better argument that the defendant could be entitled to attorney fees incurred in

20

defending the present suit, which prevents the Court from granting the motion concerning attorney fees.

Plaintiffs also move that the Court grant a summary judgment awarding them $20,400 in attorneys' fees and costs which they claim to have incurred in prosecuting this suit against Defendants. As stated by the Law Court, "it is well settled that Maine courts have no authority to award such fees in the absence of express statutory authorization or agreement by the parties." *Goodwin v. School Administrative District No. 35*, 1998 ME 263, ¶ 13, 721 A.2d 642. However, trial courts do possess a "limited, sparingly used, inherent authority to sanction parties or attorneys who clearly abuse the litigation process in the extraordinary circumstances where significant bad faith has been demonstrated." *Estate of Weatherbee*, 2014 ME 73, ¶ 17, 93 A.3d 248. In that vein, M.R. Civ. P. 11 provides that the trial court may impose attorneys' fees if the Court determines that a party or their attorney signed a pleading or motion with the intent to defeat the purpose of Rule 11's requirements. As for the court's authority to award fees here, Plaintiffs point to *Fraser Employees Fed. Credit Union v. Labbe*, 708 A.2d 1027 (Me. 1998), a case where the Law Court affirmed the imposition of sanctions against a defendant pursuant to M.R. Civ. P. 11 after a trial court determined that the defendant had filed affirmative defenses and counterclaims solely for the purpose of delaying foreclosure proceedings.

Plaintiffs' argument is not persuasive. After reviewing the record and applicable law, the Court has found no basis upon which to award Plaintiffs' attorneys fees at this stage of the litigation. The *Fraser* case is inapplicable here because Plaintiffs have not shown that Defendant has violated Rule 11 or otherwise engaged in sanctionable behavior during this litigation. Plaintiffs' request for a summary judgment awarding them attorneys' fees and costs is denied.

IV.    CONCLUSION

21

The Court has determined based on the record presented and the applicable law that Plaintiffs' have not met their burden to receive the partial summary judgment they have requested. Genuine issues concerning material facts exist as to the meaning of certain ambiguous default provisions in the parties' loan agreement pertaining, in part, to whether certain written notice requirements must be met for Plaintiffs to be considered "in default" under the agreement. Genuine issues also exist pertaining to the matter of whether and when Plaintiffs may have defaulted on their obligations under the agreement and also, consequently, what amount is due on the note and mortgage (i.e., the "payoff" amount). In addition, Plaintiffs' motion failed to demonstrate that Defendant lacks the right to be awarded attorneys' fees under the agreement and failed to demonstrate that Plaintiffs are entitled to attorneys' fees and legal costs at this time. Accordingly, Plaintiffs' motion for summary judgment is denied.

Because it has been expressed by at least one party that there is an urgent need for the resolution of this case, It is being referred for a judicial settlement conference conducted by a justice other than the undersigned. The parties will be contacted by the Court for it to be scheduled.

Entry:

1. Defendant's Motion for Rule 56(f) Relief is DENIED.

2. Plaintiffs' Motion for Summary Judgment is DENIED.

3. The Parties shall engage in a settlement conference.

The clerk may incorporate this Order on the docket by reference pursuant to M.R. Civ. P. 79(a).

_4/5/22_
Date

William Anderson, Justice
Maine Superior Court

22